UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

Plaintiff,

v.

STEPHEN M. KELLY, SUSAN S. CRANE, WILLIAM J. BICHSEL, ANNE MONTGOMERY, and LYNNE T. GREENWALD,

Defendants.

CASE NO. CR10-5586BHS

ORDER DENYING DEFENDANTS' MOTIONS FOR ACQUITTAL OR NEW TRIAL

This matter comes before the Court on Defendants' motions for acquittal or a new trial (Dkts. 138, 139) and supplemental pleading to their motions for acquittal or a new trial (Dkt. 150). The Court has considered the pleadings filed in support of and in opposition to the motions and hereby denies the motions for the reasons stated herein.

## I. PROCEDURAL HISTORY

On September 2, 2010, a Federal Grand Jury for the Western District of Washington returned an Indictment charging Defendants[1] with five counts.[2] On December 7, 2010, a jury returned guilty verdicts on each of the five counts as to each Defendant.

---

[1]Defendants in this case represented themselves *pro se*; each Defendant also had his or her own separate standby counsel for the entire trial.

[2]The Counts were charged as follows: (1) conspiracy, in violation of 18 U.S.C. § 371 (count 1); (2) trespassing on a naval base in violation of 18 U.S.C. § 1382 (counts 2 and 3); (3) destroying property within the special territorial jurisdiction of the Untied States in violation of 18 U.S.C. § 1363 (count 4); and (4) injuring property of the United States having a value in excess of $1000 in violation of 18 U.S.C. 1361 (count 5).

Dkts. 122, 123, 124, 125, 126. On December 21, 2010, Defendants Crane and Bichsel each filed a motion for acquittal or a new trial on behalf of all Defendants. Dkts. 138, 139. On January 6, 2011, the United States filed a consolidated response in opposition to Defendants' motions. Dkt. 149.

On January 7, 2011, Defendants filed both a reply to the United States' response in opposition to their motions (Dkt. 151) and a supplemental memo to the motions for acquittal or a new trial. (Dkt. 150). On January 14, 2011, the United States filed a response in opposition to the Defendants' supplemental memo. Dkt. 153.

**II. FACTUAL BACKGROUND**

At trial, the United States established through uncontroverted evidence that Defendants illegally entered Naval Base Kitsap-Bangor ("Bangor") and destroyed government property. On November 2, 2009, Defendants used bolt cutters to create a hole in a chain-link fence that surrounds the Bangor's exterior perimeter, which they then entered. After entering the base, Defendants walked to a secondary fence line that surrounds the Main Limited Area of the Strategic Weapons Facility-Pacific (the "MLA"). The MLA is surrounded by two fences. A sign on the outer fence of the MLA warns that lethal force may be used upon those who enter. Defendants, again using bolt cutters, cut through the fences to enter the MLA. Once inside the MLA, Defendants engaged in some form of demonstration. Ultimately, the five Defendants were apprehended and removed from the site through the fence holes they created. For their actions, Defendants were charged with the five counts discussed above.

On October 8, 2010, Defendants filed a motion to immediately dismiss the charges filed against them. On October 29, 2010, they filed an expanded motion to dismiss. These motions were based on Defendants' assertion that international law and the defense of necessity applied in their case. In opposition to the motions, the United States filed a motion in limine to preclude Defendants' reliance on international law or the necessity

defense. The Court concluded that these defenses were unavailable to Defendants in this case and ordered that no such evidence or argument would be permitted at trial. Dkt. 77.

Defendants have filed the instant motions urging the Court to grant acquittal or a new trial based on the following assignments of error: (1) the Court erred in defining the term "malice" for purposes of a jury instruction; (2) the United States failed to prove a threshold loss of $1000; (3) the Court improperly prohibited the Defendants from presenting evidence and argument related to international law and the necessity defenses; (4) the Court improperly commented on Defendants' decision not to testify; (5) the United States erred in failing to locate and turn over *Jenks* material created by Lance Corporal Glendenning and Steven DeCoy; and (6) that new evidence was contained in ten Marine Command voluntary statements, which were not provided to Defendants until after their trial ended.

## III. DISCUSSION

### A. Defining Malice

Defendants argue that the definition for "malice" that was provided to the jury caused the instructions given at trial to be inadequate on all counts. However, malice only attached to the elements of Count 4. *See* 18 U.S.C. § 1363 (maliciously destroying property within the special territorial jurisdiction of the United States).

At trial, the Court determined that the statute had not been defined within the statutory framework and that no case law had interpreted that term as it related to § 1363. However, malice had been defined as used in a somewhat similar statute pertaining to arson. Accordingly, the Court adopted a Black's Law Dictionary definition for malice: acting maliciously means acting "wrongfully and without legal justification or excuse."

The record adequately addresses the Court's decision on this issue. It also establishes that both parties' suggestions were considered and that Defendants' proposed definition was made without support and did not comport with the term malice as it was intended to be interpreted within the context of § 1363.

Therefore, the Court denies Defendants' motion on this issue.

**B. Proof of Threshold Amount, $1000**

Defendants argue that the United States failed to prove the threshold loss of $1,000 as required by Counts 4 and 5. However, the $1,000 threshold only applies to Count 5. *See* 18 U.S.C. § 1361 (injuring property of the United States in excess of $1,000).

The evidence admitted at trial provided an adequate basis for a reasonable jury to conclude that Defendants did cause losses exceeding $1,000. Indeed the United States produced ample evidence in the form of witness testimony from which a jury could conclude that the damage caused by Defendants far exceeded $1,000. Although the United States did not present much in the way of documentary evidence to support the damages claim, no authority requires such to be provided as evidence at trial. Defendants had the opportunity to create doubt by highlighting this lack of documentary evidence, and in light of all the testimonial evidence a jury was entitled to make a credibility determination of the evidence on damages. However, the jury, considering the evidence at trial and determining the witnesses' credibility, found Defendants guilty as charged.

The Court concludes that the relevant evidence in the record sufficiently supported the jury's verdict of guilty on this count as to all Defendants. Therefore, the Court denies Defendants' motions on this issue.

**C. International Law & Necessity Defenses**

Defendants move for acquittal or new trial on the basis that the Court erred in not permitting evidence or argument at trial about international law or the necessity defense. The Court's analysis of this issue is fully set out in its order denying Defendants' motion to dismiss and their expanded motion to dismiss and granting the United States' motion in limine on this issue. *See* Dkt. 77.

In short, based on well-settled case law the Court concluded that such argument and evidence was not available to Defendants for purposes of establishing a defense to the

counts charged in this case. Therefore, the Court denies Defendants' motions on this issue.

**D. Comment on Right to Testify**

Defendants argue that the Court improperly commented on their right to testify. In opposition, the United States argues that the comment was indirect, cured by instruction, and, if nothing else, harmless error. The Court agrees.

The record relevant to this issue pertains to a comment made by the Court during Defendant Bichsel's examination of a witness. The pertinent parts are as follows:

Q. I was just wondering why, when you had all the other things that you showed, you had pictures, why you didn't take that along when you were showing us the exhibit. Why was that, that you didn't show it?

A. They weren't evidence of -- all the things here were evidence of a crime, and this was not.

Q. That's not evidence of a crime. Why isn't it evidence of a crime?

A. It's not a tool or a record or indicia of a crime.

Q. So why, I mean, if all of that paraphernalia there is considered evidence of a crime and it's together with it, why wouldn't it be evidence of a crime?

A. It was along for the ride.

Q. What does that mean?

A. It was there, but it doesn't show evidence of a crime.

Q. Oh. I think one of the things, that it goes to the state of mind or intent of being there, you know, of the nonviolence that we hope to convey.

THE COURT: Father Bichsel, is that a question?

FATHER BICHSEL: It's a statement, Your Honor.

THE COURT: At present this witness is testifying, and you will have an opportunity to testify, so –

FATHER BICHSEL: Okay.

THE COURT: If you can put that in the form of a question, that will be fine.

***

THE COURT: . . . The other thing is that I, in response to Mr. Bichsel's providing, in effect, testimony, said that he would have an opportunity to testify. Of course, it has appeared to the Court that the defendants intend to testify. I can certainly make an instruction to the jury concerning your fifth amendment right and indicate that if you choose not to testify, that cannot in any way be used against you. It would be your choice as to whether or not you want the Court to draw attention to that. And you can consult with counsel on that . . . .

***

THE COURT: Please be seated. First, is there any desire for an instruction concerning Father Bichsel's fifth amendment rights? We're missing some folks.

***

THE COURT: All right. Now, the question I'm raising is, Father Bichsel, do you wish to have a curative instruction, that is an instruction that indicates that you have a fifth amendment right not to testify, and if you have made that choice, it cannot be in any way taken, used against you?

FATHER BICHSEL: Well, Your Honor, you know, I'm not sure that a curative instruction or curative, that that will actually solve much, you know. I think probably at this point I might ask for a mistrial.

***

THE COURT: All right. Well, the motion [for mistrial] is denied as to all five defendants. I would point out that two of the defendants indicated that they were going to offer evidence. But in any case, the question remains, is an instruction requested at this time or not?

FATHER BICHSEL: Yes, Your Honor.

THE COURT: All right. The Court proposes to say that the Court indicated earlier that Father Bichsel could testify. It's important to understand that a defendant in a criminal case has a constitutional right to not testify. You may not draw any inference of any kind from the fact that the defendant did not testify. Are you then requesting that?

FATHER BICHSEL: Yes.

THE COURT: And the other defendants?

FATHER KELLY: That's fine. Thank you.

Commenting on defendant's right to testify, whether by prosecutor, court, or co-defendant, is improper, but it is grounds for reversal only if it appears that comment may have affected the verdict. *U.S. v. Patterson*, 819 F.2d 1495, 1506 (9th Cir. 1987) (internal citations omitted). Also, instructions from a judge admonishing the jurors to disregard any comment is presumed to cure any error. *See id*. Courts have long recognized that:

> few, if any judges can altogether avoid words or actions, inadvertent or otherwise, which seems inappropriate when later examined in the calm cloisters of the appellate court. But unless such misadventures so persistently pervade the trial or, considered individually or together, are of such magnitude that a courtroom climate unfair to the defendant is discernible from the cold record, the defendant is not sufficiently aggrieved to warrant a new trial.

*Smith v. United States*, 305 F.2d. 197, 205 (9th Cir. 1962).

Here, the Court recognized the comment, addressed the issue and, with Defendants' approval, gave the jury a curative instruction regarding the comment. Additionally, prior to jury deliberations, the Court provided the jury with instruction regarding Defendants' right not to testify (Dkt. 119, Jury Instruction 3) and reiterated to the jurors that "the evidence you are to consider in deciding what the facts are consists of: (1) the sworn testimony of any witness; (2) the exhibits received in evidence; and (3) any facts to which the parties have agreed." Dkt. 119. (Jury Instruction 5). The Court also specified that "any testimony that I have excluded, stricken, or instructed you to disregard is not evidence." Dkt. 119 (Jury Instruction 6).

Based on the foregoing, the Court concludes that any improper comment was either cured by instruction or harmless given the overwhelming weight of the evidence that supported the jury's conviction of Defendants.

**E. *Jenks* Act**

Defendants argue that the United States violated the *Jencks* Act. The Act provides as follows:

> After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the

> possession of the United States which relates to the subject matter as to which the witness has testified . . . .

18 U.S.C. § 3500(b). Disclosure under the *Jencks* Act is only required for impeachment purposes. *United States v. Polizzi*, 500 F.2d. 856, 893 (9th Cir. 1974). And, a prosecutor is required to disclose only those statements which are in the possession of the United States. *United States v. Durham*, 941 F.2d 858, 861 (9th Cir. 1991) (*internal citations omitted*). A statement is in the possession of the United States when it is in the possession of the prosecutor. *Id*. Failure to comply with the *Jencks* Act may result in striking the testimony or calling a mistrial. *Id.*; 18 U.S.C. §3500(d). However, if a failure to disclose is not prejudicial and if it is not a willful avoidance and egregious dereliction of the prosecutor's statutory obligation, then a court need not invoke the drastic remedies of striking testimony or calling a mistrial. *United States v. Dupuy*, 760 F.2d 1492, 1497 (9th Cir. 1985).

In the present matter, the United States supplied, in advance of trial, the Navy's litigation and investigation reports. Included therein were the summaries of witnesses, such as Lance Corporal Glendenning ("Glendenning") and Steven DeCoy ("DeCoy"). The United States, however, did not provide a statement made by Glendenning to his Marine Command. This document was not in the litigation and investigation reports and it was not located by the Marines nor delivered to Defendants until after trial. Additionally, Decoy created a statement, which was likely destroyed before the Grand Jury Indictment was issued in this case. DeCcoy's statement was never recovered.

At trial, the Court struck DeCoy's testimony and permitted Glendenning to be recalled to explain the missing record. After trial, the United States received a copy of Glendenning's one-page voluntary statement regarding the incident involved in this case. Dkt. 149, Attachment A. The Court has reviewed this statement and concludes that it does not vary in any material respect from the testimony given by Glendenning at trial.

Based on the foregoing, the Court concludes that Defendants were not prejudiced by not receiving Glendenning's statement prior to trial. *See United States v. Gonzalez,* 110 F.3d 936, 943 (2nd Cir. 1997) (no prejudice where testimony is materially consistent with trial testimony). Defendants were also not prejudiced by DeCoy's missing statement because his testimony was stricken. *See* 18 U.S.C. § 3500(d); Fed R. Crim. P. 26(e)(2). Even if there was some error attributable to this issue, the error is harmless in light of the minimal testimony at issue and the overwhelming untainted inculpatory evidence produced at trial that could have supported the jury's verdict of guilty.

**F. Marine Command Voluntary Statements**

In Defendants' supplemental motion for acquittal or a new trial, they allege that the United States failed to turn over exculpatory evidence in violation of the *Brady* doctrine. *See* Dkt. 150 (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that the prosecution violates a defendant's due process rights if it fails to turn over evidence that is "material either to guilt or to punishment")). Specifically, Defendants refer to ten reports that were uncovered after the trial ended and thereafter disclosed by the United States to Defendants.

To prevail on a *Brady* claim, Defendants must establish the following: (1) the evidence at issue is favorable, either because it is exculpatory or because it is impeaching; (2) such evidence was suppressed by the state, either willfully or inadvertently; and (3) prejudice resulted. *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). The *Brady* doctrine is not violated when a defendant possessed the information that he claims was withheld. *See Rhoades v. Henry*, 596 F.3d 1170, 1181 (9th Cir. 2010) (citing *Raley v. Ylst*, 470 F.3d 792, 804 (9th Cir. 2006) (holding that when a defendant is aware of the essential facts enabling him to take advantage of any exculpatory evidence, the United States does not commit a *Brady* violation by not bringing the evidence to the attention of the defense.))

Here the United States did not commit a *Brady* violation. First, the evidence is not exculpatory; rather it proves the crimes charged. The Defendants' peacefulness was never

disputed, nor was it relevant to the determination of this case. Second, these ten Marine Command reports do not impeach any of the government witnesses. Third, the United States did not suppress the evidence; it did not have these specific documents but it did provide the same evidence in a different format, namely the Navy's investigative and litigation reports.

Based on the foregoing, the Court concludes Defendants have not set out a meritorious claim of a *Brady* violation.

**G. Additional Issues**

In their supplemental motion (Dkt. 150), Defendants argue error on the part of the Court for failing to take judicial notice of the existence of nuclear weapons at the Bangor base. Dkt. 150 ¶ 2. Defendants further argue that the United States should have known that the weapons alleged to be at Bangor were in direct violation of the statutes on war crimes, a fact that both the United States and the Court should have been aware.

However, these arguments are unavailing. None of this information, true or not, is relevant to the determination of whether Defendants committed the crimes as charged. Therefore, the Court denies Defendants' motions on these issues.

**H. Conclusion**

Defendants have failed to establish any basis on which the Court could order acquittal or a new trial in this case.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that the Defendants' motions for acquittal or a new trial (Dkts. 138, 139, 150) are **DENIED** for the reasons discussed herein.

DATED this 10th day of February, 2011.

BENJAMIN H. SETTLE
United States District Judge